555 P.2d 126

**ARIZONA PUBLIC SERVICE COMPANY,
Petitioner,**

v.

**The INDUSTRIAL COMMISSION of
Arizona, Respondent,**

**Arthur B. Castro, Respondent Employee.**

**No. 1 CA–IC 1354.**

Court of Appeals of Arizona,
Division 1,
Department C.

July 29, 1976.

Rehearing Denied Sept. 9, 1976.

Petition for Review Denied Oct. 13, 1976.

John S. Schaper, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Jerome & Gibson, P. C. by Richard A. Gibson, Phoenix, for respondent employee.

Langerman, Begam, Lewis, Leonard & Marks by Frank Lewis, Phoenix, amicus curiae counsel.

## OPINION

HAIRE, Chief Judge, Division 1.

On this review of an award entered in a workmen's compensation proceeding, questions are raised by the petitioning self-insured employer relating to (1) whether chiropractic treatment is included within the "medical, surgical and hospital benefits" available to an injured employee under the Arizona Workmen's Compensation Act; (2) whether an injured employee has the absolute right to choose his own physician, thereby rejecting the medical services and facilities furnished by a self-insured employer pursuant to the provisions of A. R.S. § 23–1070; and, (3) procedural questions concerning the effect of an order by the respondent Commission denying the employee's request for a change of doctors.

The factual background will be set forth as pertinent to the discussion of the particular questions involved.

█ Initially, we direct our attention to the basic question of whether under any circumstances an injured workman is entitled to receive chiropractic treatment as a part of the "medical, surgical and hospital benefits" available under the workmen's compensation law. If we determine that such benefits are not available, it will not be necessary to consider the remaining questions raised on this review.

The petitioning employer points out that any right which an injured employee has to workmen's compensation benefits is created by statute, and that thus if the right exists, its creation must be found in the statutes. From this premise the argument is made that under A.R.S. §§ 23–1021A and 23–1062A, an injured employee is entitled to receive "medical, surgical and hospital benefits"; that under A.R.S. § 32–925, a chiropractor is prohibited from administering medicine, or practicing surgery or any other branch of medicine; and that therefore chiropractic treatment cannot be considered as a "medical" benefit available under the workmen's compensation law. First, we note that petitioner's interpretation of A.R.S. § 23–1062A is narrower than justified by the language of the statute. The statute provides for the use

of the term "medical, surgical and hospital benefits" as a collective designation for:

". . . medical, surgical and hospital benefits *or other treatment,* nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of injury, and during the period of disability." (Emphasis added).

Petitioner cites several decisions from other jurisdictions, alleging that under similar statutory provisions, the cited jurisdictions have held that chiropractic services are not available as benefits under the workmen's compensation law. It is our opinion that we need not consider authorities from other jurisdictions on this question, in view of pertinent Arizona case law. While the precise question of whether chiropractic services qualify as compensable benefits under the Arizona workmen's compensation law has not been ruled upon by an Arizona decision, the Arizona Supreme Court's decision in *Chalupa v. Industrial Commission,* 109 Ariz. 340, 509 P. 2d 610 (1973) clearly points the way to the resolution of the question. In *Chalupa,* the Court of Appeals had considered whether the testimony of a licensed doctor of chiropractic could be considered as "medical" testimony on questions relating to causation and disability so as to create a conflict in the medical testimony presented to the hearing officer, and held that such medical conclusions could only be drawn by licensed medical doctors and not by chiropractic doctors. *See Chalupa v. Industrial Commission,* 17 Ariz.App. 386, 498 P.2d 228 (1972). On review, the Arizona Supreme Court set aside the above-discussed portion of the Court of Appeals opinion, holding in effect that chiropractic testimony could be considered as expert medical testimony, stating:

"While doctors with unlimited licenses are competent to give expert testimony in the entire medical field, a chiropractor or naturopath is a competent expert witness only in the limited field in which he is licensed by the State.

\*   \*   \*   \*   \*   \*

"While we agree that a chiropractor is limited as an expert witness to his field of endeavor only, we do not believe that a statute which allows him to manipulate or treat by hand articulations of the spinal column denies him the right to diagnose the reasons for that treatment. We believe that he is a competent witness to testify as to causation of any abnormalities of the spine." 109 Ariz. at 341–342, 509 P.2d at 611

We cannot perceive any rational basis for concluding that a chiropractor is a qualified medical witness within the field of his expertise for diagnostic and evidentiary purposes, but may not be considered as rendering "medical" services within the meaning of the workmen's compensation law when he is treating the injured employee and performing the services which enable him to arrive at his "medical" conclusions. We therefore hold that, in the absence of factors which might otherwise generally preclude the payment of benefits, an injured workman is entitled to compensation for chiropractic services reasonably required as a result of his injury.

We now proceed to a consideration of whether other factors presented on this review preclude the affirmance of the award of chiropractic benefits to the respondent employee.

It is unquestioned that petitioner is a self-insured employer who had contracted for the furnishing of medical benefits and had fully complied with the requirements of A.R.S. § 23–1070.[1] The second question presented by the petitioner is whether the respondent employee had the absolute right to choose his own doctor (here, a chiropractic doctor), thereby rejecting the medical services and facilities furnished by his self-insured employer pursuant to the pro-

---

1. However, petitioner does not maintain a hospital facility, as authorized by § 23–1070C.

visions of A.R.S. § 23–1070. In order to properly consider this question, we set forth in chronological sequence the facts which we deem pertinent:

1. February 21, 1974: Respondent employee injured when truck he was driving rolled over.

2. February 21, 1974: Emergency treatment, Dr. J. T. O'Neil, Hoemako Hospital, Casa Grande, Arizona. Respondent was released after emergency treatment.[2]

3. February 22, 1974: Petitioner's foreman took respondent to the offices of Dr. Ray Fife, an orthopedist, who examined the respondent, diagnosed his condition, took x-rays and prescribed medication.

4. February 26, 1974: Respondent employee seen again by Dr. Fife.

5. February 27, 1974: Respondent employee's first visit to Dr. Albert Dennis Chavez, a chiropractor. He also saw him daily thereafter for approximately two weeks.

6. March 1, 1974: Petitioner's representative receives letter from respondent requesting consent to a change of physicians from Dr. Fife to Dr. Chavez. This request was forwarded to the Commission with a statement indicating that such a change was not approved.

7. March 6, 1974: Respondent employee again sees Dr. Fife, the orthopedic specialist.

8. March 7, 1974: Respondent files request for change of physicians with the Commission, seeking a change from Dr. Fife to Dr. Chavez. This request was opposed by petitioner by letter filed on the same day.

9. March 13, 1974: Respondent again sees Dr. Fife.

10. March 15, 1974: Commission issues its "Findings and Order" denying the respondent employee's request for change of physician. The Commission's "Findings and Order" carried a 5 day protest clause, but the respondent employee did not file such protest until his request for hearing was received 21 days after the Commission's action.

11. April 5, 1974: Respondent employee filed his request for hearing directed to the Commission's above-mentioned findings and order.

———◆———

■ Subsequent to the respondent employee's request for hearing, the hearing officer conducted two hearings. He then ruled, for reasons which we will discuss in

---

**2.** The accident occurred in the vicinity of Casa Grande, Arizona, during respondent's work activities. Respondent's subsequent treatment was in Phoenix, Arizona, where he resided.

more detail later in this opinion, that the late filing of the request for hearing was of no consequence. He apparently adopted the respondent employee's argument that respondent had never accepted Dr. Fife as his treating doctor and that therefore no "change" in doctors was involved. He then proceeded to find that the respondent was entitled to "medical, surgical and hospital benefits, including treatment rendered by Dr. Chavez from February 21, 1974 through May 15, 1974." Inherent in this finding is not only the legal concept that the late filing of the request for change was of no consequence, but also the concept that, as a benefit available under the workmen's compensation law, the respondent employee had the absolute right to make an initial choice of his own doctor and that his benefits were not initially limited to the utilization of the services of the doctor furnished by his employer. For reasons hereinafter set forth, we hold that where a self-insured employer has, in compliance with the provisions of A.R.S. § 23–1070 arranged for medical benefits for its injured employees, the injured employee does not have the unre-stricted right, as a benefit available under workmen's compensation law, to choose his own doctor, thereby rejecting the medical services furnished by the employer. Before proceeding further, we emphasize the limited nature of the holding here involved. We do not rule on the question of whether there is a general right on the part of all employers to designate the attending physician for an injured employee. The only question presented here is the right of a self-insured employer who has complied with the provisions of § 23–1070 to refuse to pay for care provided to an employee who rejects available competent medical treatment provided by the employer in favor of treatment by a practitioner chosen by the employee.

A.R.S. § 23–1070 is a special statute dealing with the limited situations involving employers who have elected to directly furnish the medical and surgical or hospital benefits required under the workmen's compensation law, rather than paying an insurance premium to the State Compensation Fund or other authorized carriers to insure the payment of such benefits.[3]

3. A.R.S. § 23–1070 provides:

"A. An employer, other than the state or a political subdivision thereof, who secures compensation to his employees in the manner provided in either subsection A, paragraph 1, or subsection A, paragraph 2 of § 23–961, alone or jointly with other employers may, in lieu of making premium payments for medical, surgical and hospital benefits, provide such benefits to injured employees and may collect one-half of the cost thereof from his employees, not to exceed one dollar per month from any employee, which may be deducted from the wages of the employee.

"B. An employer electing to provide such benefits shall notify his insurance carrier and the commission of the election and render a detailed statement of the arrangements made therefor to the commission.

"C. An employer who maintains a hospital for his employees or who contracts with a physician for the hospital care of injured employees shall, on or before January 30 each year, make a verified written report to the commission for the preceding year showing the total amount of hospital fees collected and showing separately the amount contri-buted by the employees and the amount contributed by the employers. The report shall also contain an itemized account of the expenditures, investments or other disposition of the fees, and a statement showing the balance remaining.

"D. An employer who fails to notify his insurance carrier and the commission of his election to provide such benefits, or who maintains a hospital or contracts for hospital service as provided in subsection C of this section, and fails to make the financial report required therein, is liable for such benefits as provided in § 23–1062.

"E. If the medical, surgical or hospital aid or treatment being furnished by an employer is such that there is reasonable ground to believe that the health, life or recovery of any employee is endangered or impaired thereby, the commission may, upon application of the employee or upon its own motion, order a change of physicians or other conditions. If the employer fails to comply with the order promptly, the injured employee may elect to have medical, surgical or hospital aid or treatment provided by or through the state compensation fund. In that event

This statute, and the Industrial Commission's rules adopted pursuant thereto, contemplate that medical, surgical and hospital benefits may be provided by the self-insured employer through contractual arrangements made by the employer.[4] A.R.S. § 23–1070E allows the employee to obtain a change from the employer-furnished physician upon the filing of an application showing that:

> " . . . there is reasonable ground to believe that the health, life or recovery of any employee is endangered or impaired thereby . . . ."

If the employee had the unqualified right to refuse to accept the services of medical facilities and personnel provided by a self-insured employer, and to impose liability upon the self-insurer for the cost of such other medical treatment, then the statute and the Commission's rules would be totally meaningless. Further, as pointed out by petitioner, if the complying self-insured employer were liable for the expense of any treatment obtained by the employee, including treatment not furnished by the employer, what would be the purpose in the adoption of A.R.S. § 23–1070D? That

subsection imposes liability upon a self-insured employer for such expenses only when the employer has failed to make the election to provide such benefits or has failed to comply with the reporting requirements of § 23–1070.

We find no Arizona decision directly in point on the question presented, although *Yanochik v. Industrial Commission,* 22 Ariz.App. 503, 528 P.2d 1262 (1974), obviously assumes that the injured employee of a complying self-insured employer is limited to the medical services furnished by the employer absent a showing of the special circumstances specified in § 23–1070E.

*Estes Corporation v. Industrial Commission,* 23 Ariz.App. 370, 533 P.2d 678 (1975) is not in point. In *Estes,* this Court considered the question of whether the injured employee's failure to go to the company's doctor on the day of his accident was fatal to his claim because of the provisions of A.R.S. § 23–908E.[5] The court held:

> "A.R.S. Section 23–908.E does not preclude an injured employee from seeking treatment by his own physician at the time the injury occurs; it merely allows the company to have its own physician

the claim of the injured employee against the employer shall be assigned to the state compensation fund for the benefit thereof, and the state compensation fund shall furnish to the insured employee medical, surgical or hospital aid or treatment as provided in this chapter."

4. The Industrial Commission's Rule 4–13–203 (8), Administrative Rules and Regulations, provides as follows:
"8. The applicant for authorization to self-insure who desires to come within the provisions of A.R.S. § 23–1070, (1970), shall be required to provide the Commission with details of contractual arrangements providing for medical, surgical and hospital benefits by an employer for his employees. If such maintained hospital or contracted physician is provided, the detailed provisions of such program and arrangements must be filed with the Commission, and such annual reports required by statute must be submitted for approval."

5. A.R.S. § 23–908.E provides:
"E. When an accident occurs to an employee, the employer may designate in writing

a physician chosen by the employer, who shall be permitted by the employee, or any person in charge of the employee, to make one examination of the injured employee in order to ascertain the character and extent of the injury occasioned by the accident. The physician so chosen shall forthwith report to the employer, the insurance carrier and the commission the character and extent of the injury as ascertained by him. If the accident is not reported by the employee or his physician forthwith, as required, or if the injured employee or those in charge of him refuse to permit the employer's physician to make the examination, and the injured employee is a party to the refusal, no compensation shall be paid for the injury claimed to have resulted from the accident. The commission may relieve the injured person or his dependents from the loss or forfeiture of compensation if it believes after investigation that the circumstances attending the failure on the part of the employee or his physician to report the accident and injury are such as to have excused them."

examine the injured employee *one time* for the purpose of determining 'the character and extent of the injury.'" 23 Ariz.App. at 374, 533 P.2d at 684 (Emphasis in original)

We agree with the Court's decision in *Estes*, and hasten to point out that *Estes* did not involve a self-insured employer, nor were the provisions of A.R.S. § 23–1070 even discussed. It is noteworthy that the fact that a self-insured employer and the requirements of § 23–1070 were not involved was emphasized by the injured employee's counsel in the briefs filed before this Court in *Estes*.

It is readily apparent that the provisions of A.R.S. § 23–908E do not purport to specify or govern the medical benefits available to an injured employee under the workmen's compensation act. Rather, the statute is in the nature of a "discovery" device. Its provisions do not discuss "treatment", but simply provide for an "examination" of the injured employee by a physician chosen by the employer. Refusal by the employee to allow the discovery examination by the employer's physician can result in complete disallowance of compensation benefits. The vast majority of workmen's compensation claims do not involve employers coming within the provisions of § 23–1070 and in those cases it is easy to perceive the necessity for a statutory provision such as § 23–908E. Although there should generally be no need for such a discovery provision when an employer providing his own medical benefits pursuant to the provisions of § 23–1070 is involved, it is not inconceivable that such discovery under § 23–908E might be necessary for a § 23–1070 employer in the event the injured employee had elected to, at his own expense, select his own doctor for treatment of his industrial injury.

There is another similar statutory provision for "discovery" in the workmen's compensation code. While A.R.S. § 23–908E deals with an employer's discovery rights at the inception of a claim, A.R.S. § 23–1026 allows similar discovery examination "from time to time" during the duration of the employee's entitlement to compensation.[6] Our discussion above concerning § 23–908E is equally applicable to the provisions of § 23–1026. These statutes simply have no relevance to the question of the right of an employee to choose his own doctor and impose liability for such choice upon an employer who has elected to provide medical benefits pursuant to the provisions of § 23–1070.

Both the respondent employee and the respondent Commission in their briefs filed in this Court, while contending that § 23–1070 does not give the petitioning self-insured employer the right to designate the initial treating physician, would admit that this right is given to a § 23–1070 employer who, not only contracts with a physician for medical care, but also furnishes a hos-

---

**6.** A.R.S. § 23–1026 *provides as follows:*

"A. An employee who may be entitled to compensation under this chapter shall submit himself for medical examination from time to time at a place reasonably convenient for the employee, if and when requested by the commission, the state compensation fund, his employer or the insurance carrier.

"B. The request for the medical examination shall fix a time and place having regard to the convenience of the employee, his physical condition and ability to attend. The employee may have a physician present at the examination if procured and paid for by himself.

"C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

"D. A physician who makes or is present at the medical examination provided by this section may be required to testify as to the result thereof.

"E. Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery."

pital for such purpose.[7] We find nothing in the statute which would justify such a distinction. The various policy and philosophical arguments made by respondents for this distinction would best be made to the legislature.

Although, because of the many variations in statutory language and decisional development, we are normally reluctant to rely upon authority from other jurisdictions in workmen's compensation matters, we point out that the construction we place upon § 23–1070 is in accord with the view adopted in most jurisdictions. As stated in 99 C.J.S. *Workmen's Compensation* § 273, p. 929:

> "Usually under the compensation acts the right to choose the medical or surgical attendant and the hospital is in the first instance with the employer or his insurer, and if an employee with knowledge that he has suffered a compensable injury contracts for his own medical, surgical, or hospital treatment, he cannot recover the costs thereof, unless the employer has neglected or refused to provide the necessary services or has consented to the selection by the employee, or other circumstances exist justifying selection by the employee."

*See also,* 2 Larson's, *Workmen's Compensation* § 61.12 (1976) for a discussion of the authorities and the policy contentions involved; Annot. 142 A.L.R. 1205 (1943).

In their arguments before this Court the respondents state that:

> "The most fallacious inference in support of the petitioner's argument is that the right of a citizen (an industrially injured workman or otherwise) to select his own physician must be specifically granted rather then clearly abridged by law."

Upon thorough analysis, perhaps the real fallacy is in considering this matter as a "choice of physician" question at all. The only medical benefits to which an injured workmen is entitled are those provided by statute. Thus, the real question presented, relates to the extent of medical benefits which the workmen's compensation act requires from employers who have complied with the provisions of § 23–1070.

Our determination that the hearing officer was in error in his basic concept that the workmen's compensation act gives injured employees of a § 23–1070 employer the unqualified right to initially reject the services of the employer-furnished doctor and thereby impose liability upon the employer for services rendered by the employee-selected doctor, does not resolve all of the issues presented on this review. Even though, as we have held above, the employee was limited to an initial course of treatment by the employer-selected physician, he would still be entitled to a change of doctors or other medical benefits upon a showing that there was reasonable grounds to believe that his health, life or recovery was endangered or impaired by the treatment being provided by the employer. A. R.S. § 23–1070E; A.C.R.R. R4–13–113, formerly Rule 13, Rules of Procedure before the Industrial Commission of Arizona. Along this line, the final issue presented involves the failure of the respondent workman to timely file a request for hearing concerning the Commission's order which denied his request to change from Dr. Fife, the employer-furnished physician, to Dr. Chavez for chiropractic treatment. The hearing officer found that:

> "5. The late filing of the REQUEST FOR HEARING is of no consequence here since the Commission's FINDING AND ORDER was erroneously issued. The applicant commenced treatment with Doctor Chavez prior to the filing of his claim and before any action taken by the employer."

■ This finding is at best confusing when considered in the light of the uncontroverted facts which showed that the re-

---

7. The hearing officer takes an identical position in his "Memorandum" placed in the file after his decision in this claim.

spondent employee had been seen by the employer's physician on at least two occasions, February 22 and February 26, and had an appointment for a third visit, before the filing of his request for change of doctors. First, as we have stated above, even assuming that no treatment had commenced, the employee did not have the unrestricted right to reject the employer-furnished medical care. Second, and separate and apart from the foregoing, we must reject any contention that this treatment was immaterial because it was rendered prior to the actual filing of the workman's claim. Here, the employer knew of the injury on the date it occurred, and the workman signed a report and application for benefits on that date. Also on the same date, the employer immediately furnished medical treatment. There was no contention that the injury did not arise out of and in the course of employment. Under these circumstances, the employer could not, in view of the provisions of A.R.S. § 23–1062A, sit idly by awaiting receipt by the Commission of the formal claim. A.R.S. § 23–1062A requires that medical benefits be made available "promptly, upon notice to the employer." Absent circumstances not presented here, an employer would not be justified in refusing to provide medical benefits merely because the formal claim had not been received by the Commission.

■■ In our opinion the uncontroverted facts do not establish a basis for the hearing officer's determination that the respondent employee had not initially engaged in a course of treatment so as to bring into play the provisions of the Commission's former Rule 13 (now A.C.R.R. R4–13–113), thereby requiring the consent of the Commission to his request for a change of doctors. The respondent employee in fact filed his request with the Commission seeking such an order authorizing a change. The Commission then issued its order denying the request, and there was

no timely request for a hearing concerning that order. However, the respondent employee did file a late request for hearing concerning the order.[8]

This sequence of procedural events brings into focus another contention urged by the employer as a basis for setting aside the hearing officer's award, *i.e.*, that irrespective of any of the other arguments advanced on this review, the order denying the employee's request for change of doctors became final when the request for hearing was not timely filed. As quoted above, the hearing officer rejected this contention, stating that the late filing was of no consequence since the order was "erroneously issued". We rejected the hearing officer's reasoning that an order may somehow escape the ordinarily applied principles of finality merely because of the contention that the true facts as subsequently perceived did not justify its issuance in the first instance. In considering the application of the doctrine of finality to notice of claim status issued by carriers, we stated in *McMurray v. Industrial Commission,* 25 Ariz.App. 614, 545 P.2d 462 (1976):

> "A.R.S. § 23–1061F requires that a carrier give notice to a claimant of any denial of a claim, any change in the amount of compensation or the termination thereof. Sections 23–941A and 23–947 provide for the filing of a request for hearing as a method to invoke the jurisdiction of the Commission for the purpose of resolving controversies arising between the parties. *The fact that a notice of claim status may have been erroneously issued, legally wrong, or ambiguous might well furnish the basis for the controversy which must then be resolved.*" (Emphasis added). 545 P.2d at 464

*See also, Holmes Tuttle Broadway Ford v. Industrial Commission,* 27 Ariz.App. 128, 551 P.2d 577 (filed June 29, 1976).

8. Neither party questions on this review the validity of that portion of the Commission's

order which required the filing of a request for hearing within five days.

**378**

The above reasoning is equally applicable to orders or awards entered by the respondent Commission. Here, the hearing officer should have initially conducted a hearing to determine the reasons for the late filing, and if found excusable under the principles summarized in *Kleinsmith v. Industrial Commission*, 26 Ariz.App. 77, 546 P.2d 346 (1976), majority opinion approved and adopted as the opinion of the Arizona Supreme Court, 113 Ariz. 189, 549 P.2d 161 (filed May 10, 1976), he should have then proceeded to a hearing on the merits of the request for a change of doctors. Since the hearing officer did not rule on the merits of either of these questions, we express no opinion on the sufficiency of the evidence with respect thereto, including the question of whether the circumstances shown would have supported a finding that the respondent employee's physical condition was such that chiropractic treatment was reasonably required.

The award is set aside.

EUBANK, P. J., Department C, and NELSON, J., concur.