**236**

619 P.2d 745

TRANSIT MANAGEMENT OF TUCSON,
Petitioner Employer,

Aetna Fire Underwriters Insurance
Company, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Nick J. Cutrules, Respondent Employee.

Nick J. CUTRULES, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Transit Management of Tucson,
Respondent Employer,

Aetna Fire Underwriters Insurance
Company, Respondent Carrier.

Nos. 1 CA–IC 2336, 1 CA–IC 2337.

Court of Appeals of Arizona,
Division 1,
Department C.

July 1, 1980.

Rehearing Denied Aug. 20, 1980.

Everett, Bury & Moeller, P. C. by J. Michael Moeller, Tucson, for petitioner employer/respondent employer and petitioner carrier/respondent carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Rabinovitz & Dix, P. C. by Bernard I. Rabinovitz, Tucson, for respondent employee/petitioner employee.

## OPINION

OGG, Chief Judge.

This review of an Industrial Commission award involves two Special Action–Industrial Commission petitions. The first, brought by the carrier and employer, challenges the part of the award determining that the Commission properly permitted the claimant to change physicians. The second, brought by the claimant, challenged the part of the award determining that the carrier properly suspended his compensation. For purposes of this appeal, we consolidate the disposition of these petitions. We affirm the award permitting the claimant to change physicians and set aside the award permitting the carrier to suspend claimant's industrial benefits.

The procedural background of these petitions and the evidence as to the substantive issues are as follows. The claimant, a bus driver for the employer, was injured in an industrial accident when an automobile hit his bus in the rear end. He sustained sprains to the right lumbar, lumbosacral, and cervical areas. The carrier accepted his workmen's compensation claim and awarded medical benefits and temporary total compensation.

On the day of the accident, the claimant received treatment at a hospital emergency room. The attending physician referred him to the Tucson Clinic, where Drs. Heim and Simbari treated him with medication and physical therapy. After some three weeks of this regimen, Dr. Heim released him for regular work. He opined that the claimant's continuing complaints of pain had no objective basis and were attributable to his overreacting and malingering.

Because of his dissatisfaction with Dr. Heim's evaluation of his condition, on March 12, 1979, the claimant, acting in his own behalf, presented a written request to the Industrial Commission for permission to change physicians. The alternative physi-

cian, Dr. Marquez, submitted a letter confirming his willingness to treat the claimant.

On March 14, 1979, prior to the Commission's action on this request, the claimant received a telephone call from an agent of the carrier informing him that it had scheduled an independent medical examination with a Dr. Silver on March 16, 1979. He testified that although he knew the carrier was statutorily empowered to request that he attend an independent medical examination and his benefits could be suspended as a sanction for non–attendance, he believed that his earlier request to the Commission for permission to change physicians took priority over the carrier's request. He consequently informed the caller that he would not attend a medical examination until the Commission acted on his request. He failed to attend the scheduled examination.

On March 21, 1979, based on Dr. Heim's release of the claimant to regular work status, the carrier issued a notice of claim status changing the claimant's compensation from temporary total to temporary partial. On that same day, it issued a notice suspending the claimant's compensation for his refusal to submit to the scheduled medical examination.

On April 9, 1979, the Commission approved the request to change physicians. The carrier timely requested a hearing on this action. The claimant then timely requested a hearing on the notice suspending his compensation.

The Commission's hearing division conjointly processed the requests and scheduled one hearing for September 12, 1979. On July 31, 1979, the hearing officer convened an informal conference at which the parties agreed that the issues in controversy were the Commission's approval of the change of physicians and the carrier's suspension of benefits. During this conference, the hearing officer informed the claimant of his right to counsel and urged him to obtain representation, but the claimant insisted that he intended to represent himself. The hearing officer also instructed the claimant to attend a rescheduled independent medi-

cal examination, which he did on August 21, 1979.

Because he was emotionally distraught, the claimant could not appear at the hearing on September 12th. It was rescheduled for September 19th. On or about September 17th, the claimant retained counsel, who contacted the hearing officer on September 17th to request that the rescheduled hearing be continued. The hearing officer denied this request.

At the hearing, the claimant's counsel renewed his request for continuance. He reiterated that the claimant wanted Dr. Marquez to appear.[1] Finally, he requested permission to make an offer of proof as to the claimant's psychological condition and its relationship to the industrial accident. The hearing officer denied all requests.

The award determined that both the Commission's approval of the change of physicians and the carrier's suspension of benefits were proper. The carrier and employer requested review of the award as to the change of physicians. The claimant requested review as to the suspension. The hearing officer affirmed the award as to both determinations. On January 17, 1980, the carrier and employer filed a Special Action–Industrial Commission petition. On January 18, 1980, the claimant filed a Special Action–Industrial Commission petition. The respective notices of appearance failed to request affirmative relief. *See* Special Actions Rules of Procedure, rule 10(f). The carrier and employer's opening brief challenged only the validity of the change of physicians. The claimant's opening brief challenged only the validity of the suspension. None of the parties moved to consolidate the petitions.

■ The first substantive issue concerns the Commission's approval of the claimant's request to change physicians. Although the request relied on A.R.S. § 23–1070(E), this provision is part of a special statutory

scheme intended to apply exclusively to employers who directly provide medical care benefits to their employees. *See Arizona Public Service Co. v. Industrial Commission,* 27 Ariz.App. 369, 555 P.2d 126 (1976). Because neither the Tucson Clinic nor the treating physicians had any relationship with the claimant's employer, A.R.S. § 23–1070(E) is inapplicable.

A.R.S. § 23–1071(B) provides that "[n]o employee may change doctors without the written authorization of the insurance carrier, the commission or the attending physician." It is undisputed that the claimant sought and received the required written permission from the Commission.

Relying on A.R.S. § 23–1070(E) and cases interpreting it, *e.g., Capitol Foundry v. Industrial Commission,* 117 Ariz. 37, 570 P.2d 808 (App.1977); *Kennecott Copper Corp. v. Industrial Commission,* 115 Ariz. 184, 564 P.2d 407 (1977); and *Arizona Public Service Company v. Industrial Commission,* the carrier and employer contend that the Commission failed to conform to the standard governing authorization of changes of physicians. The analogy to A.R.S. § 23–1070(E), however, is suspect. Unlike A.R.S. § 23–1070(E), § 1071(B) does not include an express standard governing authorizations of changes of physicians. Moreover, because A.R.S. § 23–1070(E) is part of a special statutory scheme, its standard applies only to employers who directly provide medical care benefits to their employees.

Rule 13(c), A.C.R.R. R4–13–113(C), defines the Commission's standard for authorizations of changes of physicians. This standard is broader than the one in A.R.S. § 23–1070(E), for it allows an approval of a request to change physicians if "there are reasonable grounds to believe that . . . [the claimant's] recovery may be expedited." In this case, because Dr. Heim refused to further treat the claimant and Dr. Marquez agreed to treat him, the Commission had

---

1. In his conference memorandum and in a letter of August 17, 1979, to the claimant, the hearing officer stated that the claimant had withdrawn his subpoena request for Dr. Marquez. In correspondence dated subsequent to both the memorandum and the letter, however, the claimant repeated his subpoena request. For the purposes of this review, we assume arguendo that a timely subpoena request was in effect.

reasonable grounds to believe that the claimant's recovery might be expedited by the change of physicians. We find no error in the hearing officer's affirmation of the Commission's approval of the request to change physicians.

▮ The second substantive issue concerns the carrier's suspension of the claimant's compensation. The validity of this suspension depends on compliance with A.R.S. § 23–1026(A), (B), (C).[2] We address in turn the claimant's arguments as to noncompliance with § 23–1026.

The claimant first contends that the carrier failed to give adequate notice of the independent medical examination. He testified that the telephone call from the carrier two days before the scheduled examination was the first and only notice he received. It is undisputed that the carrier mistakenly sent its correspondence to him at his employer's address. No written notice is of record.

Although subsections (B) and (C) require the time and place of the examination to be reasonably convenient for the employee, they do not prescribe a particular form of notice. Rule 14, A.C.R.R. R4–13–114, however, requires written notice to be sent to the claimant at least five days prior to the scheduled examination.

It is the carrier's contention that the hearing officer was correct in finding that the claimant's actual notice of the examination excused the five day written requirement of Rule 14, and that there was a waiver of the statutory and rule requirements.

The hearing officer made a specific finding that:

"The applicant's absolute understanding of the facts surrounding this malfeasance through full knowledge of the scheduled independent medical examination and total awareness of the salient Workmen's Compensation Law provisions constitutes a waiver of the careless notification procedure adopted by the defendant carrier in this procedure."

Under the facts, we find it was error for the hearing officer to make an award suspending benefits for the failure of the claimant to attend the carrier's medical examination. The unrepresented claimant, who had filed a formal request with the Industrial Commission for a change of physicians, was suddenly confronted with a phone call from a stranger, directing him to appear before the carrier's physician two days later. There is no allegation that the claimant was advised by the caller that the claimant's benefits could be suspended if he failed to appear for the physical examination.

The workmen's compensation statutes and rules require that the medical examination be reasonably convenient to the employee and that the claimant be given at least five days written notice prior to the scheduled examination. With the notice given, the claimant had no duty to attend the physical examination, and there is nothing in the record to show he agreed to waive proper written advance notification of the scheduled examination.

▮ A carrier cannot violate all the workmen's compensation rules of notice to the claimant in setting a date for an independent medical examination and then use the claimant's failure to appear as the justification for the suspension of benefits.

2. These subsections provide as follows:

A. An employee who may be entitled to compensation under this chapter shall submit himself for medical examination from time to time at a place reasonably convenient for the employee if and when requested by the commission, the state compensation fund, his employer or the insurance carrier.

B. The request for the medical examination shall fix a time and place having regard to the convenience of the employee, his phys-

ical condition and ability to attend. The employee may have a physician present at the examination if procured and paid for by himself.

C. If the employee refuses to submit to the medical examination or obstructs the examination, his right to compensation shall be suspended until the examination has been made, and no compensation shall be payable during or for such period.

The award suspending benefits in 1 CA–IC 2337 is set aside. The award approving the request for the change of physicians in 1 CA–IC 2336 is affirmed.

DONOFRIO and CONTRERAS, JJ., concur.