652 P.2d 147

**PACIFIC EMPLOYERS INSURANCE CO., Petitioner Carrier,**

**King Masonry, Petitioner Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Joe L. Pitre, Respondent Employee.**

No. 1 CA–IC 2662.

Court of Appeals of Arizona, Division 1, Department C.

July 15, 1982.

Rehearing Denied Sept. 21, 1982.

Review Denied Oct. 19, 1982.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Donald L. Cross, Brian C. Bond, Phoenix, for petitioners carrier and employer.

James A. Overholt, Acting Chief Counsel, The Industrial Com'n of Ariz., Ely, Bettini & Ulman by Joseph M. Bettini, Wayne Turley, Phoenix, for respondent.

OPINION

CONTRERAS, Judge.

At issue in this special action review of an Industrial Commission award is whether the administrative law judge improperly subjected the petitioners to liability for respondent's increased disability resulting from unsuccessful surgery undertaken without notice to, or authorization by, the petitioners to treat an industrial injury. We find that the respondent's decision to undergo the surgery was reasonable under the circumstances, and affirm the award.

SURGERY AND FIRST AWARD

Respondent Pitre (respondent), a construction laborer, suffered an injury to his low back on February 13, 1979, while in the employ of the petitioner employer. He placed himself under the care of David Di-

nin, D.O., who remained his attending physician from that time forward and who attended him throughout all times relevant to these proceedings. Dr. Dinin diagnosed a cervical/lumbosacral strain/sprain, and followed a course of conservative treatment, involving back manipulation and physical therapy. Thereafter, however, respondent was readmitted to the hospital with complaints of lower back and leg pain. A myelogram was performed, revealing a defect at L–4, L–5 intervertebral disc space consistent with a herniated disc at that level. At that time, Dr. Dinin and a consulting orthopedic surgeon, Philip H. Lewis, D.O., requested that petitioner carrier authorize surgery on the herniated disc. The carrier requested that an independent medical examination be performed to consider the necessity for the surgery. The independent examination was conducted by Robert S. Barbosa, D.O., an orthopedic surgeon. Dr. Barbosa opined that respondent was not a candidate for surgery because there was a lack of objective findings, and recommended a course of conservative care involving medications and treatment. Petitioner carrier refused authorization for the surgery.

Respondent was then released from the hospital and underwent several weeks of additional conservative care pursuant to Dr. Barbosa's recommendations. At the end of that period, however, Dr. Lewis still felt surgery was in order. Surgery was performed by Dr. Lewis on May 29, 1979, revealing a disc herniation at L–4, and a congenital stenosis, which had caused symptoms of restricted movement of the L–5 root which passed through the area of stenosis.

On August 10, 1979, petitioner carrier issued its notice of claim status denying liability for the payment of medical benefits relating to the back surgery, following which a request for hearing was filed by the respondent. Formal hearings on the question of coverage of the back surgery were held on February 26 and April 30, 1980. In the Decision and Award of May 19, 1980, petitioner employer and petitioner carrier were found not to have received

sufficient notice of the surgery as required by A.R.S. § 23–1062(A). They were therefore found not responsible for medical and hospital expenses relating to that surgery. The administrative law judge further noted in finding 11 of that award:

> Whether or not the evidence in the record is sufficient to establish that the back surgery was reasonably required is a question which need not be decided by this Hearing Officer since the notice requirements were not met. However, it is the opinion of this Hearing Officer that the opinions of Dr. Lewis and Dr. Dinin that the surgery was necessary are placed in considerable jeopardy by the complete lack of objective findings, as pointed out in the testimony of Dr. Barbosa.

That award, affirmed on administrative review, was not appealed and became final.

## DISABILITY AND SECOND AWARD

Respondent continued to receive his compensation and medical benefits (exclusive of reimbursement for the surgery and hospitalization) until these benefits were terminated by a notice of claim status issued by petitioner carrier on August 29, 1980. The notice of claim status also stated petitioner carrier's position that the respondent employee had no permanent disability caused by his injury of February 13, 1979. The notice of claim status was based upon a report of a consultation group examination of the respondent on August 13, 1980, by Thomas H. Taber, Jr., M.D. and three other doctors. The group consultation report concluded:

> In our opinion, as a result of the injury and the surgery, the consultants are of the opinion that the patient has sustained approximately five percent (5%) permanent impairment of the whole man attributable to these events.
> Conceding that the five percent is based principally (sic) upon the laminectomy, from a medical point of view the injury lead (sic) to that surgery. In a purely medical setting we are unable to respond to the hypothetical absence of surgical intervention.

As we understand the duties of a mason tender, in our opinion the patient would not be able to return to that vocation.

Respondent filed a request for hearing in protest of the August 29, 1980, notice. Hearings were held on February 10, March 19, and May 11, 1981.

At the hearings, testimony was taken from three medical experts: Dr. Dinin, Dr. Barbosa, and Dr. Taber. All three physicians testified that respondent had permanent residual disability due to his back condition. The three had varying views on whether the disability was attributable to the injury, the surgery, or both.

Dr. Dinin testified that an 11% physical functional impairment of the whole man had resulted, and specified 5% of the impairment as due to the surgery itself, and 6% as due to the loss of range of motion due to the injury. He also testified that respondent's condition had become medically stationary on May 9, 1980. Dr. Barbosa testified that, in his opinion, respondent's condition had not been objectively improved by the surgery, and that in fact he felt respondent's condition had been somewhat better prior to the surgery than after the surgery. He was also of the opinion that at least some of respondent's impairment was due to the surgery, but was unable to say how much. He further testified that, in his opinion, the surgery had not helped respondent's condition. Dr. Taber was unable to say within a reasonable degree of medical probability whether any permanent disability would have resulted had there been no surgery.

On June 22, 1981, the administrative law judge issued a decision and award, which stated, in pertinent part:

14. Thus, the Law of Arizona appears to be that whether or not there has been negligence or malpractice on the part of a physician which causes additional disability, and whether or not a physician has conducted surgery without giving notice to the defendant insurance carrier pursuant to A.R.S. § 23–1062 A, that the applicant is entitled to compensation benefits for any disability which results from a combination of the accident and of the medical treatment which he receives from a legally qualified physician designed to improve his condition. In this case there is no evidence except that it was the intent of the physicians who performed the surgery on the applicant to improve his condition. Therefore, considering all of the evidence as a whole, the undersigned is persuaded that the applicant's condition became medically stationary on May 9, 1980, and that the applicant sustained a 10% unscheduled permanent partial disability of the whole person as a result of his industrial injury.

The award was affirmed on administrative review, and this special action follows.

## CAUSATION OF DISABILITY

In this special action, petitioners raise three arguments that the imposition of liability for the increased disability was improper. They first contend that respondent's failure to notify them of his decision to undergo surgery broke the chain of causation between his industrial injury and any additional disability resulting from that surgery. They contend, in essence, that the surgery became the superseding cause of the disability. As authority for that proposition, petitioners rely on *O'Donnell v. Industrial Commission,* 125 Ariz. 358, 609 P.2d 1058 (App.1979); *Allen v. Industrial Commission,* 124 Ariz. 173, 602 P.2d 841 (App. 1979); and 1 A. Larson, Workmen's Compensation Law § 13.21.

Larson, as petitioners point out, states a general rule that

conduct of the employee related to the treatment of a compensable injury ... should not break the chain of causation unless it amounted to an intentional violation of an express or implied prohibition.

Larson, pp. 3–392—3–393. However, later in the same section, applying a general principle that the reasonableness of a claimant's act governs the compensability of its consequences, Larson states that

if claimant gets conflicting instructions on treatment from different doctors, and

chooses to follow his own doctor's advice, this is not unreasonable.

*Id.,* p. 3–407. Larson treats the question involved here—obtaining private surgery without consulting the employer—more fully in § 13–23.

When an employee takes such action, two separate questions arise. The first is whether the employer is liable for the medical costs incurred. The general rule is that he is not, and Arizona law is in accord. A.R.S. § 23–1062(A); *Pickett v. Industrial Commission,* 26 Ariz.App. 213, 547 P.2d 484 (1976); *Arizona Public Service Co. v. Industrial Commission,* 27 Ariz.App. 369, 555 P.2d 126 (1976). That of course is not the issue here, the question having been finally resolved in favor of the carrier by the first award.

■ The second question, and the one involved here, is whether the carrier is liable for any added disability resulting from the private treatment. Here, the authorities cited support compensability. We note that the Arizona statute, A.R.S. § 23–1062(A), like the New Jersey statute discussed in Larson § 13.23, "appears to address its requirement of notice before medical treatment solely to the issue of reimbursement for medical and hospital expenses as such." *Id.* at 3–434. This court has previously held that an employee who takes time off from work on the advice of his own physician, even though the employer's physician had released him for work, was entitled to lost time benefits. *Lee v. Industrial Commission,* 121 Ariz. 589, 592 P.2d 785 (App.1979).

Nor does Arizona case law dealing with an employee's intentional act support petitioners' contention that the industrial injury was not the cause of the disability. In *O'Donnell v. Industrial Commission, supra,* this court adopted a reasonableness test:

We therefore hold, in determining the causal relationship of a subsequent injury or aggravation to a primary injury where the claimant's activity is a factor in bringing about the subsequent injury or aggravation, such activity shall not be considered to break the chain of causa-

tion, unless the activity under all of the circumstances is unreasonable in light of the claimant's knowledge of his previous condition.

125 Ariz. at 361, 609 P.2d at 1061. The increased disability is thus compensable if respondent's decision to undergo surgery was reasonable under all the circumstances and not "intentionally reckless conduct." *Allen v. Industrial Commission, supra,* 124 Ariz. at 177, 602 P.2d at 845 (Haire, J., dissenting).

■ Respondent concedes that the administrative law judge made no express finding that respondent's surgery decision was reasonable, but argues that the evidence would support such a finding. We agree. The administrative law judge was not required to make a finding as to every individual fact. We must presume that the administrative law judge considered all relevant evidence in making the award. *E.g., Perry v. Industrial Commission,* 112 Ariz. 397, 542 P.2d 1096 (1975). We will vacate for failure to make a finding only where we are unable to determine whether the basis of the administrative law judge's conclusion is legally sound. *See Cavco Industries v. Industrial Commission,* 129 Ariz. 429, 631 P.2d 1087 (1981). In this case, it is apparent from the record that the award is reasonably supported by the evidence and legally sound. Throughout the award, the administrative law judge emphasized that respondent sought the help of, and relied on the advice of, a qualified physician, and that the surgery was designed or intended to improve his condition. We believe that under the circumstances of this case, such findings are tantamount to a finding that respondent's conduct was reasonable.

## CAUSATION OF SURGERY

■ Petitioners contend that the administrative law judge made no finding that the surgery was (1) causally related to the industrial injury or (2) necessary as a result of the industrial injury. We note that whether or not the surgery was "necessary", i.e., "reasonably required", is relevant only to determining whether or not

**412**

benefits for the surgery itself are appropriate, and that is not the issue here. We believe that medical treatment can be causally related to an industrial injury even if it is not reasonably required. It appears that, at the hearing, the factual causation between *industrial injury and surgery was* virtually assumed by all parties, and the administrative law judge saw no necessity to make a finding on the subject. In their request for review, petitioners claimed that the surgery was "unrelated" and "bears no relationship to any industrially-related event." In response to such claims, respondent argues that the chain of (factual) causation was unaffected by the necessity of the surgery or the skill with which it was done. We agree. It was uncontroverted that the surgery was undertaken only because of, and with the intent to improve, the condition resulting from the industrial injury. The administrative law judge explicitly so found and in our opinion this constitutes a finding of causation. Consequently, we accept the administrative law judge's finding of factual causation. We therefore need not address respondent's argument that such a finding was implicit in the first award.

## APPORTIONING CAUSATION AND LIABILITY

Finally, petitioners contend that there is an unresolved conflict in the testimony as to what portion of respondent's disability is attributable to the injury and what portion is attributable to the surgery. This contention is founded on the premise that petitioners are liable for the former but not the latter. Since the premise has been rejected above, this argument is no longer pertinent.

For the foregoing reasons, the award is affirmed.

EUBANK and HAIRE, JJ., concur.