720 P.2d 110

Gregory BAUDANZA, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Service Maintenance Systems, Respondent Employer,

American Manufacturers Mutual Insurance, Respondent Carrier.

No. 1 CA–IC 3343.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 28, 1986.

Reconsideration Denied March 13, 1986.

Review Denied June 3, 1986.

Dix, Rehling & Waterman by Charles G. Rehling, Tucson, for petitioner.

Dennis P. Kavanaugh, Chief Counsel, Phoenix, for respondent.

Slutes, Sakrison, Grant & Pelander, P.C. by James Sakrison, Tucson, for respondent employer and carrier.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Industrial Commission award dismissing a request for hearing on liability for unapproved medical expenses. The justification for this dismissal is the administrative law judge's conclusion that medical benefits are compensable only if the employer, its carrier, or the Industrial Commission approves the medical treatment before it is provided. Because of this conclusion, the administrative law judge did not address the adequacy of the notice that was provided or reach the merits of the claim. We· set aside the award because notice that medical treatment is necessary, as opposed to prior approval for the treatment by the carrier, is all that is required for compensability.

The claimant hurt his lower back on January 13, 1983 while working for the respondent employer. The employer's compensation insurer, the respondent carrier (Ameri-

can), ultimately accepted the compensability of this injury.  The initial medical treatment was uncontroversial. Attending physician Jack I. Varon, D.O., a family practitioner, provided conservative care. When the claimant failed to improve, Dr. Varon consulted orthopedic surgeon Roger Terry Grimes, D.O. Dr. Grimes recommended and subsequently performed a laminectomy.

After this surgery, the claimant initially improved, but then progressively regressed. According to him, his chief physical complaint was stabbing pain in the left leg. The claimant also developed a severe depression, which required psychiatric hospitalization.

Both Drs. Varon and Grimes provided post-surgical treatment. By October, 1983, Dr. Varon had concluded that continued conservative care was inadequate. Dr. Grimes, however, disagreed that surgery was advisable, particularly because of the claimant's severe depression. To corroborate his opinion, Dr. Grimes consulted neurosurgeon George F. Martin, M.D., who also recommended against surgery.

Dr. Varon acquiesced until November, when he consulted another neurosurgeon, Richard Paul Greenberg, M.D. In Dr. Greenberg's opinion, a CT scan showed a disk fragment that had been missed in the first surgery. He recommended additional surgery to remove the fragment. Before acting on this recommendation, Dr. Varon called American for its permission. American orally denied the request and subsequently sent Dr. Varon a letter explaining that it was relying on the recommendations of Drs. Grimes and Martin. American, however, did not issue a notice of claim status denying medical benefits for surgery.

Dr. Varon nevertheless decided to proceed and scheduled surgery with Dr. Greenberg for November 30, 1983. Dr. Varon notified the claimant's counsel of his decision, but the record is unclear whether or not counsel knew of American's refusal. The record is also unclear as to whether or

not Dr. Varon told American that surgery would proceed even without American's approval. American's answering brief, however, concedes that such notice was given. On oral argument counsel for the carrier said, "I guess the record is not clear as to whether or not the carrier was informed ahead of time whether or not the surgery was going to be performed." Later in his argument he conceded that whatever the record showed, the carrier had received adequate notice.

Drs. Greenberg and Varon performed the scheduled surgery. Dr. Martin was also present, but only because Dr. Greenberg's hospital status required a senior observer. The cost of this surgery and hospitalization exceeded $8,000. American refused to pay this bill. Because of this, the claimant requested an Industrial Commission investigation of American's liability for this expense under the terms of A.R.S. § 23–1061(J), which provides:

> The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing pursuant to § 23–941 within sixty days after receiving notice of such impropriety.

The matter was then referred to an administrative law judge for a hearing.

A substantive summary of the hearing testimony is unnecessary because the administrative law judge did not reach the merits. Instead, he dismissed the hearing because the claimant indisputably had surgery before obtaining permission from American or the Industrial Commission. The pertinent part of the administrative law judge's Findings and Award are as follows:

> [A.R.S. § 23–1062(A)] places upon the applicant the burden of requesting *permission* to receive a type of treatment prior to undergoing that treatment. (Emphasis supplied). The Court of Appeals in *Pac. Emp. Ins. Co. v. Indus.*

*Com'n of Ariz.*, 133 Ariz. 408 (App.), 652 P.2d 147 (1982), was faced with a very similar factual situation as exists in the instant case. The Court observed that when an employee takes the course of action that the applicant did in the instant case the question arises:

> 'The first is whether the employer is liable for the medical costs incurred. The general rule is that he is not, and Arizona law is in accord. A.R.S. § 23–1062(A); *Pickett v. Industrial Commission*, 26 Ariz.App. 213, 547 P.2d 484 (1976); *Arizona Public Service Co. v. Industrial Commission*, 27 Ariz.App. 369, 555 P.2d 126 (1976)....'

See also *Lee v. Industrial Commission*, 121 Ariz. 589 (App.), 592 P.2d 785 (1979). The evidence in the instant case is clear and convincing that the applicant did not have *authorization or permission* for the surgery performed November 30, 1983. (Emphasis supplied). The applicant is not entitled to medical, surgical or hospital benefits as provided by the Workers' Compensation Act as a result of surgery performed on November 30, 1983. In order to have avoided such a harsh result, the applicant should have filed a REQUEST FOR HEARING PURSUANT TO A.R.S. § 23–1061 J prior to undergoing the surgery so that a determination could have been made as to the reasonableness and necessity of the surgery as well as the propriety of the carrier's refusal to authorize or grant permission.

On review, the claimant argues that the medical benefits statute and case law at most require notice to the employer and not the prior approval for treatment by the employer or carrier. He asserts that Dr. Varon provided American adequate notice, and therefore concludes that he was entitled to a hearing on the merits.

American answers by relying on the same authority cited in the award. The primary authority is the medical benefits statute itself. It requires prompt provision of reasonably required medical benefits "upon *notice* to the employer, ..." A.R.S.

§ 23–1062(A) (emphasis added). This language refers to notice only. The medical benefits statute obviously does not expressly require approval. American argues, however, that case law has interpreted this statute to imply an approval requirement. We disagree.

The leading case interpreting the notice requirement is *Pickett v. Industrial Comm'n*, 26 Ariz.App. 213, 547 P.2d 484 (1976). It involved a claimant who built a private swimming pool for hydrotherapy without notifying the employer or its carrier. Medical benefits were denied for lack of notice. On review, the claimant denied that any notice was required, relying on supreme court authority rejecting a requirement of "[p]rior authorization for medical treatment reasonably held necessary by competent medical practitioners...." *Gullick v. Industrial Comm'n*, 94 Ariz. 237, 241, 383 P.2d 123, 126 (1963). This court held that the medical benefits statute requires notice because the statute had been amended after *Gullick* to add the specific notice requirement. *See Pickett* 26 Ariz.App. at 214, 547 P.2d at 485. But this holding was "limited to the need for notice to the employer, and in this connection, we do not equate the need for prior notice to a requirement for prior approval." *Id.*, 26 Ariz.App. at 215, 547 P.2d at 486. This difference between notice and approval was underscored by distinguishing *Pickett* from "a situation in which the employer has refused to provide medical treatment after a timely request." *Id.*, 26 Ariz.App. at 214, 547 P.2d at 485.

American next relies on *Pacific Employers Ins. Co. v. Industrial Comm'n*, 133 Ariz. 408, 652 P.2d 147 (App.1982), which is factually similar but legally dissimilar to the present case. In both cases the attending physician requested permission to do surgery, the carrier denied the request, and the attending· physician then unilaterally proceeded to do surgery. In both cases the Industrial Commission denied medical benefits. In *Pacific Employers*, however, the basis for the award was lack of notice, not lack of approval. Moreover, this award became final without appellate review.

The appellate case concerned a wholly distinct issue: liability for permanent disability related in part to the unapproved surgery. The opinion addresses medical benefits only to distinguish this liability from liability for permanent disability:

> Larson treats the question involved here—obtaining private surgery without *consulting* the employer—more fully....
>
> When an employee takes such action, two separate questions arise. The first is whether the employer is liable for the medical costs incurred. The general rule is that he is not, and Arizona law is in accord.... That of course is not the issue here, the question having been fully resolved in favor of the carrier by the first award.

*Pacific*, 133 Ariz. at 411, 652 P.2d at 150 (citations omitted) (emphasis added).

American and the administrative law judge have misinterpreted this *dictum*, which is a paraphrase of Larson. The relevant section is entitled "[o]btaining private surgery without consulting employer." 1 Larson, *Workmen's Compensation Law*, § 13.24 at 3–473 (1985). The text makes it clear that the term "consulting" refers to notice: "If ... the employee, without *notifying* the employer or commission, obtains surgery or other medical treatment privately, two questions may arise." *Id.* (emphasis added). *Pacific Employers*, therefore, merely confirms the requirement of adequate notice.

■ American also misrelies on the two other cases cited by the administrative law judge: *Lee v. Industrial Comm'n*, 121 Ariz. 589, 592 P.2d 785 (App.1979); *Arizona Pub. Serv. Co. v. Industrial Comm'n*, 27 Ariz.App. 369, 555 P.2d 126 (1976). These ·cases do not concern the notice requirement of A.R.S. § 23–1062(A). Rather, they interpret the self-provider statute. *See* A.R.S. § 23–1070. This statute specifically requires Industrial Commission approval for private medical treatment. This statutory approval requirement, however, is not generally applicable. It does not

apply to the present case because the respondent employer was not a self-provider.

■ The statutory approval requirement that does apply to this case is A.R.S. § 23–1071(B). It prohibits a claimant from unilaterally changing doctors. *See id.* ("No employee may change doctors without ... written authorization...."). Unlike A.R.S. § 23–1070(E), however, the attending physician as well as the Industrial Commission has authority to approve the change. *Accord Mountain Shadows Resort Hotel v. Industrial Comm'n,* 147 Ariz. 411, 710 P.2d 1066 (App.1985). In the present case, Dr. Varon was an attending physician and approved Dr. Greenberg's surgery.

■ We therefore conclude that the cited authority does not support the requirement of prior *approval.* Nor have we independently discovered authority for this requirement. American's position therefore is reduced to a policy argument about the wisdom of such a requirement. This policy argument should be addressed to the legislature, not to this court. *Cf. Safeway Stores, Inc. v. Industrial Comm'n,* 1 CA-IC 3185 (Ariz.App. Nov. 7, 1985) (decision to allow post-compensability settlements for legislature, not this court). Our role is limited to effectuating the legislative intent that is expressed in the statute. *E.g., Sunstate Equip. Corp. v. Industrial Comm'n,* 135 Ariz. 477, 662 P.2d 152 (App. 1983). Furthermore, we assume that an unambiguous statute means what it plainly states. *Id.,* 135 Ariz. at 479, 662 P.2d at 154.

In the present case, A.R.S. § 23–1062(A) plainly states that notice is required, not that approval is required. American asserts, however, that this plain meaning is absurd because notice alone serves no purpose. We disagree. Notice permits the employer or its carrier to "investigate the reasonableness of or need for the suggested treatment and suggest alternative procedures before the treatment is a *fait accompli.*" *Pickett,* 26 Ariz.App. at 214, 547 P.2d at 485. Furthermore, Larson sug-

gests a rule that is consistent with this plain meaning:

> [D]ifficult questions can arise when there is a difference of opinion on diagnosis or appropriate treatment, as when the employer's doctor recommends conservative measures while the claimant thinks he should have surgery. One way to settle this kind of controversy is to let the result turn on whose diagnosis proves to be right.

2 Larson, *Workmen's Compensation Law* § 61.12(e) at 10–707 (1983).

We therefore adopt the plain meaning of the medical benefit statute: notice alone is required. Consequently, the administrative law judge erroneously concluded that the claimant forfeited medical benefits because he had unapproved surgery.

■ The carrier also conceded in oral argument that if the claimant did not need prior permission to proceed with surgery the fact that he filed a request for a hearing under A.R.S. § 23–1061(J) to require the carrier to pay for his treatment only *after* the treatment was undertaken has no bearing on whether or not he is entitled to invoke the provisions of that section. In view of this concession, we will not address this issue in detail except to observe that there is nothing in the statute itself which specifies when an inquiry under A.R.S. § 23–1061(J) is to be brought. Of course, a claimant who proceeds with treatment without the permission of the carrier or without a ruling from the Industrial Commission that the treatment is compensable does so at his own risk. If the treatment is ultimately found not to be reasonably required, it will not be compensable. *See Shockey v. Industrial Comm'n,* 140 Ariz. 113, 118, 680 P.2d 823, 828 (App.1983).

■ The claimant also urges us to reach the merits of his claim. This we cannot do. The claimant is entitled to *reasonably required* medical benefits. *See* A.R.S. § 23–1062(A). In the present case, the medical evidence conflicted on this question. The administrative law judge, not this court, must resolve this conflict. *E.g., Hopper v.*

*Industrial Comm'n,* 27 Ariz.App. 732, 558 P.2d 927 (1976).

Accordingly, we set aside the award to allow a hearing on the merits.

Award set aside.

CORCORAN and EUBANK, JJ., concur.