761 P.2d 169

**SCOTTSDALE MEMORIAL HOSPITAL,**
Petitioner Employer,

and

**Argonaut Insurance Company,**
Petitioner Carrier,

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Kirk A. McNatt, Respondent Employee.**

No. 1 CA–IC 3796.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 30, 1988.

Long & Lester, P.A. by Steven C. Lester, Phoenix, for petitioners employer and carrier.

Catherine A. Fuller, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

Gorey, Delaney & Melkonoff, P.C. by Edgar M. Delaney, Phoenix, for respondent employee.

## OPINION

JACOBSON, Presiding Judge.

The primary issue raised by this review of an Industrial Commission award is whether inadequate notice under A.R.S. § 23–1062(A) of an imminent hospitalization, coupled with a failure to obtain authorization for a change of doctors under A.R.S. § 23–1071(B), operates to relieve a carrier for the costs of compensable medical care. Subsidiary issues include wheth-

er claimant established to a reasonable medical probability that the industrial incident on April 23, 1986, was a substantial contributing cause of his depression and pain syndrome complex and whether the finding that claimant's condition was not stationary was reasonably supported by the evidence.

On April 23, 1986, Kirk A. McNatt (claimant) injured his lower back while riding in an elevator at Scottsdale Memorial Hospital when the elevator stopped suddenly several times. His claim for benefits was accepted by Argonaut Insurance Company (carrier), and claimant received conservative care from Dr. Donald W. Fischer, from May 5 to July 28, 1986. At that time Dr. Fischer released him to light work status. On July 28, 1986, the carrier issued a notice of claim status placing claimant in a temporary partial disability status effective that date.

Three days later, the carrier received a telephone call from St. Luke's Medical Center seeking authorization to admit claimant to its Pain and Stress Center. The carrier refused to authorize the admission, but claimant was nevertheless admitted. At that time he was evaluated by Dr. Robert Barnes, a psychiatrist, and he also came under the care and treatment of Dr. Wayne S. Broky, a physiatrist. There is evidence that a Dr. Jones, a psychologist associated with the respondent employer, referred the claimant to the Pain and Stress Center. On August 22, 1986, the claimant requested a change of physician to Drs. Barnes and Broky. This request was granted by the carrier on August 27, 1986. He was hospitalized until September 10, was readmitted to the general psychiatric unit five days later because of depression, and was discharged on October 15.

Based upon an October 30 independent medical examination by the Southwest Disability Evaluation Center, the carrier issued a notice of claim status terminating claimant's temporary compensation and active medical treatment as of October 30, and finding that he sustained no permanent impairment. Claimant timely protested both notices of claim status, and requested a § 23–1061(J) hearing regarding the carrier's obligation to cover his initial hospitalization at St. Luke's pain and stress center.

At the consolidated hearings held on these issues, claimant and five doctors testified. After the hearings, the administrative law judge resolved conflicts in the medical testimony and found that claimant was not stationary or able to return to work as of July 28, 1986, was not stationary as of October 30, 1986, or at the time of the hearings, and was in need of additional treatment. He also adopted Dr. Barnes' opinion that claimant's depression and pain syndrome complex were directly related to the April 23, 1986, industrial episode. He ordered the carrier to pay for all of claimant's hospitalizations.

Based upon a request for review, the administrative law judge issued supplemental findings. He found that the claim for benefits was not barred simply because some medical care was received before the written authorization was issued, and that Dr. Fischer and the petitioners authorized the transfer to claimant's care to Drs. Barnes and Broky.

In addition, the administrative law judge found that lack of adequate notice under A.R.S. § 23–1062(A) was immaterial because petitioners failed to investigate claimant's need for care until after he filed a request for benefits pursuant to A.R.S. § 23–1061(J). Finally, in response to petitioners' argument that same-day notice of an imminent hospitalization was inadequate because it was not an emergency admission, he found it was "inferentially, if not factually, an emergency admission when a severely depressed and extremely anxious patient such as [claimant] is admitted to an in-patient psychiatric facility for treatment."

On review, petitioners argue that claimant's admission to the Pain and Stress Center was not an emergency; therefore, notice to the carrier was required. Moreover, it is claimed that benefits are automatically forfeited before a written authorization to change doctors is issued; that claimant did not prove that the industrial injury was a substantial contributing cause of his de-

pression; and that the administrative law judge improperly and incorrectly interpreted an X-ray report to award continuing benefits when claimant was already stationary.

### Written Authorization to Change Doctors and Adequacy of Notice

The relevant statute provides: "No employee may change doctors without the written authorization of the insurance carrier, the commission or the attending physician." A.R.S. § 23–1071(B). Petitioners argue that a claimant automatically forfeits the right to any benefits for medical care received before written authorization to change doctors is issued. We turn first to the question whether medical and hospitalization costs incurred prior to written authorization to change physicians are collectible against the carrier.

In making this argument, the carrier relies primarily upon *Kennecott Copper Corp. v. Industrial Commission*, 115 Ariz. 184, 564 P.2d 407 (App.1977), in which this court held:

> ... that the failure of Perez to comply with the statutory requirements of § 23–1071 for obtaining authorization to change physicians cannot be waived by Commission Rule 57 or granted through retroactive application.

However, this language was interpreting the rights of claimants to change doctors under A.R.S. § 23–1070(E). This statute deals with self-providing employers who have elected to directly furnish the medical benefits required by the workers' compensation act rather than paying workers' compensation insurance premiums to insure the payment of such benefits. As pointed out in *Arizona Public Service Co. v. Industrial Commission*, 27 Ariz.App. 369, 555 P.2d 126 (1976), employees of such employers do not have an unrestricted right to choose their own doctors, because to do so would require the employer to provide double medical coverage—that provided directly and that provided to the employee's own doctor—contrary to the clear statutory scheme for § 23–1070(E) employees.

■ Such considerations do not arise when the employer does not provide direct medical benefits. Rather the requirement, under A.R.S. § 23–1071(B), of obtaining written authorization for change of doctors, is to insure continuity and avoid fragmentation of treatment and to insure that the additional treatment is reasonably necessary to heal the claimant. These considerations are satisfied when authorization to change doctors is given. Thus, abstractly, it is not the timing of the authorization which is important, but rather whether the authorization is granted.

■ However, the requirement of authorization under A.R.S. § 23–1071(B) must be read in conjunction with the notice requirements of A.R.S. § 23–1062(A). This statute provides, in part, that "[p]romptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment...." In *Pickett v. Industrial Commission*, 26 Ariz.App. 213, 547 P.2d 484 (1976), this statute was construed to require notice to an employer before an employee can incur compensable expenses on his or her own. The reason such notice is required is that "it gives the employer an opportunity to participate in the decision-making for which it ultimately must pay; it can investigate the reasonableness of or need for the suggested treatment and suggest alternate procedures before the treatment is a *fait accompli.*" *Pickett*, 26 Ariz. App. at 214, 547 P.2d at 485. *Pickett* also pointed out that the failure to give notice might not void the compensable expenses when an emergency existed when the employee was unable to give reasonable notice. But absent such special circumstance, failure to give notice results in non-liability of the employer for the expense incurred.

The claimant does not dispute the legal effect of the notice requirement, but argues that an emergency existed requiring his immediate admittance to the pain clinic. The administrative law judge in addition to finding "inferentially ... an emergency admission," also found that the carrier's failure to subsequently investigate the claimant's need for care until the 1061(J) petition

98

was filed estopped the carrier from raising the lack of adequate notice.

Turning to the emergency argument, there is simply no evidence to support it. No physician testified as to the emergency nature of the admission and, in fact, the claimant admitted no emergency existed— he simply did not want to wait the two or three weeks necessary to obtain permission. The administrative law judge's "inferential" finding of emergency is not supportable.

Alternatively, the administrative law judge found an estoppel arising from the carrier's failure to investigate the necessity for the treatment, since the treatment was ongoing, unlike the *fait accompli* treatment referred to in *Pickett.* We have several problems with this theory. First, it is not relied upon by the claimant in this court. Second, there is no evidence as to how long a reasonable investigation would have taken and thus the length of the hospitalization may be less than a reasonable investigative period. Finally, there is no evidence, one way or the other, that the carrier was aware that after it refused to authorize the admission on such short notice, the claimant was going to seek reimbursement for the expense as an industrial responsibility. In fact, the hospitalization has been paid for by claimant's group health carrier. This lack of a factual basis renders the estoppel theory likewise unsupportable.

Finally, the claimant cites *Baudanza v. Industrial Commission,* 149 Ariz. 509, 720 P.2d 110 (App.1986), for the proposition that all the statute requires is *notice* of the anticipated treatment, not *approval* of that treatment and because notice, albeit short notice, was given, the carrier is responsible for the expenses incurred. It is true *Baudanza* holds that it is the notice, not the approval, of the expected treatment, that is necessary. Implicit in that holding is the requirement that the notice must be given in sufficient time for the carrier to conduct · the investigation contemplated by *Pickett.* Calling the carrier from the admission desk of the hospital does not give reasonable notice and *Baudanza* is not to the contrary.

In our opinion, the notice requirements of A.R.S. § 23–1062(A) and the authorization requirements of A.R.S. § 23–1071(B) are statutory limitations on the right of an employee to incur compensable expenses associated with his medical treatment. While we might be willing to allow retroactive application of an authorization of change of doctors, to a non-self provider employer, this does not operate to relieve the claimant of giving notice of non-emergency treatment under A.R.S. § 23–1062(A).

However, since the carrier subsequently authorized the change of doctors upon claimant's request of August 22, 1986, which of necessity approves the treatment supplied by those doctors, expenses incurred after that date are the responsibility of the respondent carrier.

### Causation

■ The next issue before us is whether the record reasonably supports a conclusion that the industrial episode in the elevator on April 23, 1986, was a substantial contributing cause of claimant's depression and pain syndrome complex.

The relevant statute provides that "[a] mental injury, illness or condition is not ... compensable pursuant to this chapter unless ... some physical injury related to the employment was a substantial contributing cause of the mental injury, illness or condition." A.R.S. § 23–1043.01(B). The administrative law judge resolved conflicts in the medical testimony by adopting Dr. Barnes' opinion, and found "that the [claimant's] depression and pain syndrome complex [were] directly related to the industrial episode of April 23, 1986."

Petitioners argue that the weight of the evidence was contrary to this finding. The Industrial Commission has the duty to resolve all conflicts in the evidence, especially conflicts in the medical testimony, and this court does not "weigh the evidence but considers it in the light most favorable to sustaining the award...." *Perry v. In-*

*dustrial Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975).

In that light, we have examined Dr. Barnes' testimony. At the hearing, he stated that his diagnosis for claimant's first hospitalization was "[m]ajor depression secondary to lumbosacral strain/sprain syndrome." Later, he was asked if he had "an opinion as to whether the psychiatric problems ... and the pain ... was causally related to the industrial injury." The doctor responded that "the depression came on following that—that accident and the inability to work." He also testified that claimant's depression was "secondary to the pain experienced in the lumbosacral strain" in that "the pain from the accident and the inability to go to work, the loss of income, the anxieties he had about that seemed to be precipitants for the depression."

Petitioners allege that this testimony does not amount to a statement that the industrial episode was a substantial contributing cause of the depression and pain, so that claimant never established a sufficient causal relation to meet the statutory requirement. In determining whether the statutory requirements are met, our supreme court has noted:

> When the "magic word" has not been used in the medical witness's testimony, it becomes necessary for us, as in the present case, to review thoroughly and carefully such testimony. The question to be resolved then, is whether any reasonable theory of evidence supports the hearing officer's resolution of the question of causation.... If the testimony in the context in which it is given establishes "substantial contribution," the burden of proof is established.

*Phelps v. Industrial Comm'n,* 155 Ariz. 501, 506, 747 P.2d 1200, 1205 (1987). We find that the sum of Dr. Barnes' testimony supports the award.

### Need for Continuing Treatment

█ The final issue before us is whether the finding that claimant's condition was not stationary was reasonably supported by the evidence. Claimant does not address this issue in his answering brief.

In examining the doctors' testimony, we note that Dr. Barnes, a psychiatrist, examined the claimant on November 25, 1986, and testified on December 22, 1986. When asked whether claimant was psychiatrically stable in late November, he stated that "he was certainly markedly improved. It was rather hard with someone with a significant depression to say that it's stable at this point.... I don't know as I'd be willing to say psychiatrically stable for another several months." Dr. Broky, a physician specialist in physical medicine and rehabilitation, last saw claimant on December 15, 1986, and testified on December 22. Regarding claimant's condition, he testified: "I think it's coming very close to being stationary. However, I would not want to discharge him as of the 15th [of December] and I—I feel one or two more visits are indicated."

The petitioners contend that the administrative law judge based his determination that the claimant was not stationary on the judge's own evaluation of X-rays.

In view of the doctors' testimony that the claimant was nearing a stationary condition, the Southwest Disability Report that he was stationary, and the claimant's failure to argue this issue on appeal, we conclude that, at the very least, the administrative law judge failed to resolve this issue on the acceptable evidence before him.

For the foregoing reasons, the award of the Commission is set aside.

HAIRE and GREER, JJ., concur.