827 P.2d 487

**BALL MFG., Petitioner Employer,**

**Lumbermen's Underwriting Alliance, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Tony Mohr, Respondent Employee.**

**No. 1 CA–IC 90–154.**

Court of Appeals of Arizona, Division 1, Department A.

March 17, 1992.

Joseph L. Moore, Ltd. by Joseph L. Moore, Phoenix, for petitioner employer and petitioner carrier.

Anita R. Valainis, Chief Counsel, Industrial Com'n of Arizona, Phoenix, for respondent.

J. Terence Fox, Phoenix, for respondent employee.

## OPINION

VOSS, Judge

This is a special action review of an industrial commission award for a compensable claim and finding of "special circumstances" justifying liability for medical treatment, including back surgery, despite lack of statutory notice to petitioner employer (Ball). The issues presented on review are: (1) whether respondent employee (claimant) satisfied his burden of medical proof; and, (2) whether petitioner carrier's (Lumbermen's) processing of an apparent no time loss claim constituted a "special circumstance" obviating the notice requirement of Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–1062(A).[1] We set aside the award because although claimant satisfied his burden of proof, the current record does not support the finding of "special circumstances" because the Administrative Law Judge ("A.L.J.") also found that claimant handled his claim "thoughtlessly," that he could easily have remedied his "self-proclaimed ignorance," and that his fears for job security were "not wellfounded [sic]."

## I. FACTUAL AND PROCEDURAL HISTORY

On August 2, 1988, while working for Ball, claimant injured his back. He reported the injury to Ball, which submitted an employer's report of injury to Lumbermen's.

Claimant missed work on the day of his injury and sought treatment with chiropractor Marc W. Widoff, D.C. Claimant subsequently completed the worker's section of a report of injury. Dr. Widoff completed the physician's section of this report and diagnosed intercostal neuritis based upon claimant's complaints of mid-back pain. He prescribed chiropractic treatment and restricted claimant to light work. Claimant missed only one day of work and then returned to light duty work for Ball.

On August 12, 1988, the industrial commission formally notified Lumbermen's of the claim. Because the claim was considered a "no time loss" claim, Lumbermen's did not issue a notice of claim status formally accepting the claim or otherwise directly communicate with claimant. Rather, it returned the notification list to the commission indicating that claimant's claim was a no time loss claim. It also paid Dr. Widoff as he submitted bills for claimant's treatment.

On August 26, 1988, Dr. Widoff reported favorable progress but recommended additional treatment. This report also indicated that claimant had been released for regular work. Claimant did resume regular work for Ball by the end of August 1988. He, however, never returned to Dr. Widoff.

Claimant instead saw his wife's family physician, George Anderson, M.D., on September 14, 1988 for lower back pain. Insurance coverage was provided under his wife's private medical policy. Claimant provided no history of the August 2, 1988 industrial injury. Rather, he reported having chronic lower back pain and instability since the late 1970's and some recurrence of the instability while lifting at work. Dr. Anderson did not report any complaints or clinical findings suggesting radiculopathy, and he diagnosed a lumbosacral strain.

Claimant saw Dr. Anderson several times in September, October and November, 1988 for ongoing lower back pain. Dr. Anderson recorded no complaints of buttocks or leg pain. In late November and early December, claimant saw Dr. Anderson for a physical necessary to enter nursing school. Claimant did not then complain of any lower back symptoms.

Claimant continued working full-time for Ball until about January 1989, when he began part-time work because of the demands of nursing school. Approximately April 1989, he returned to full-time work because of financial needs. Toward the end of April, claimant told Ball that he could not do his work and needed to see a doctor because of his back. He, however, did not mention the August 1988 injury.

---

1. Unless an injury causes more that seven days of total disability, no disability benefits are payable. *See generally* A.R.S. § 23–1062(B). Such claims are no time loss claims.

Ball responded by demanding a full medical release before claimant returned to work.

On April 26, 1989, claimant returned to Dr. Anderson. He again did not mention the August 1988 injury and received coverage under his wife's insurance. Dr. Anderson for the first time recorded radicular complaints, and he referred claimant to a specialist, Joseph S. Gimbel, M.D. Claimant provided a history to Dr. Gimbel of a gradual onset of radicular symptoms and denied any specific injury to his leg. Dr. Gimbel recommended conservative modalities and, if symptoms persisted, a MRI.

Toward the end of May 1989, claimant requested and received a written release to return to work from Dr. Gimbel's secretary. He sought work from Ball, but none was available because of a downturn in business. Claimant had no further contact with Ball.

On June 19, 1989, claimant had a MRI, which revealed a herniated disc at L5, S1. After reviewing the results, Dr. Anderson referred claimant to neurosurgeon William L. White, M.D. When claimant next saw Dr. Anderson on July 12, 1989, he for the first time provided a history of the August 1988 injury and also reported a recent slip and fall that aggravated his symptoms.

Dr. White first examined claimant on July 24, 1989. Claimant provided a history of the August 1988 injury and also of back injuries since 1978, only one of which involved radicular pain and which resolved. Dr. White recommended additional conservative measures and discussed surgery with claimant. This report was copied to Dr. Anderson and to the industrial commission but not to Lumbermen's or to Ball.

On July 31, 1989, claimant filed a petition to reopen the August 1988 claim, which identified Lumbermen's as Ball's carrier, and supported it with Dr. White's July 1989 report. On August 7, 1989, Dr. White reported to Dr. Anderson, with a copy to the commission, that conservative care had failed and that surgery would be scheduled. No direct notice was provided to Ball or to Lumbermen's. On August 15, 1989, the industrial commission notified Lumber-

men's of the petition and directed it to either reinstate benefits under the no time loss claim or "to deny same by written notification in accordance with instructions in the NTL procedures." On August 17, 1989, Dr. White performed surgery with good results.

On August 25, 1989, Lumbermen's issued a notice of claim status denying the petition to reopen. Claimant timely requested a hearing and subsequently retained his current attorney. On February 8, 1990, Lumbermen's rescinded the August 1989 notice and substituted a notice of claim status formally accepting the August 1988 claim on a no time loss basis and also terminating this claim without permanent impairment effective August 26, 198[8]. (The notice of claim status erroneously terminated the claim effective August 26, 1989 instead of August 26, 1988.) Claimant timely protested this termination.

The claim proceeded to hearing as a continuing benefits matter. Pending the hearing, Lumbermen's asserted the affirmative defense of lack of notice under A.R.S. § 23–1062(A).

At the hearings, claimant, several lay witnesses and Doctors Widoff, Anderson and White appeared. Lumbermen's reiterated its affirmative defense, and the A.L.J. ruled that evidence could be presented on the issue. No evidence was introduced, however, concerning industrial commission guidelines for no time loss claim processing.

Claimant testified that the August 1988 injury immediately caused mid and lower back pain and pain radiating into his left leg. From date of injury until approximately April 1989, the radiating pain was intermittent and tolerable. After April 1989, it became constant and progressively intolerable.

Claimant testified that he told Dr. Widoff of his lower back symptoms but that Dr. Widoff apparently had misdescribed them. Claimant also explained that he lost confidence in Dr. Widoff because the treatment only temporarily helped the lower back

symptoms. He then unilaterally discontinued the treatment:

> I wanted to see how it would do. You see, the chiropractor's office kept calling our house up in the afternoon, come on in, come on in. I felt like they were, because it was under industrial, that they were just going to keep on using it, keep coming in every week for the rest of my f___ life. I said, "I don't need to see you all the time, and if I have any more problems I'll go see a normal medical doctor."

(Expletive deleted.)

Claimant explained that he saw Dr. Anderson under his wife's insurance coverage because he did not want to jeopardize his employment. He, however, denied that he hid this treatment from Ball. He also testified that he then considered his condition to be related to the August 1988 injury but not to be serious. Claimant did not claim to have told Dr. Anderson about leg pain before April 1989, but rather explained that he apparently had not been symptomatic when he saw Dr. Anderson. Claimant also explained that he finally provided Dr. Anderson a history of the August 1988 injury in July 1989 because he then realized the seriousness of his condition.

Claimant also acknowledged that he had not referred to the August 1988 injury when he told Ball in April 1989 that he could not work and needed treatment, but claimant explained that he felt the connection was understood. He also explained that he had sought the work release in May 1989 despite his symptoms because he needed to work. When he discovered that Ball had no work available, he sought unemployment benefits, but his claim was denied because of his back condition.

Claimant testified that he filed a petition to reopen because, never having had contact with Lumbermen's, he was proceeding "blindly" and "ignorantly." He did not notify Ball of the back surgery because he did not realize notice was necessary. Claimant assumed that the surgery had been authorized by his wife's insurance carrier, but he did not know whether the bills had been paid because he and his wife

had divorced in September 1989. He, however, knew that his post-surgical treatment had not been covered.

A co-worker, who became claimant's friend, and another friend testified that claimant had no problems before and that he had noticeable and progressively worsening difficulties with his back after August 1988. Claimant's supervisor testified that he was aware of the August 1988 injury, but that claimant had returned to regular work within about a week and never complained of this injury again. He did not connect claimant's April 1989 report of back problems to the August 1988 injury. He denied that claimant had any reason not to inform Ball of any ongoing problems related to the August 1988 injury.

Dr. Widoff testified that claimant complained only of mid-back pain and certainly never mentioned radicular pain. On cross-examination, he conceded that claimant's first history mentioned sharp lumbar pain upon injury with a constant, dull ache at the time of examination. Dr. Widoff also testified, inconsistently with his report, that he never released claimant to return to regular work.

Doctors Anderson and White both testified that if they accepted claimant's latest history, the August 1988 injury would be the probable cause of the herniated disc discovered in June 1989. On cross-examination, Dr. White qualified his opinion as follows:

> Q: If I ask you to assume Doctor, that there is evidence in this record which would reflect that during this period of time from August 2, 1988 through the entirety of the time that Mr. Mohr was under chiropractic care, that he presented with no complaints of low back pain, let alone any radicular pain. Or pain going down into either—extending down into either of his extremities.
>
> Could you state then upon that hypothetical, within a reasonable medical probability, that the August 2, 1988 episode of moving the ping pong table contributed to the pathology, if you accept that hypothetical only and reasonable medical probability, being more than a 50

percent likelihood of those complaints there was such a contribution?

A: Usually I would think that if an injury resulted, natural disk herniation, it would result within a fairly short period of time. Back pain maybe we're talking about a few days. Usually right away, but sometimes it can come on a day or two later. The leg pain, it depends on when the disk herniation comes out far enough to cause compression of the nerve root and that can be delayed days, weeks, even months sometimes. But to have no back and leg pain for a period of several months would seem to me like the injury probably did not result in a disk herniation.

Q: My hypothetical was specifically low back pain during that period of August 2, through August 26?

A: Right.

Q: Would that be the same?

A: Yes.

The A.L.J. issued an award addressing only compensability. He expressly accepted claimant's credibility:

After carefully observing the demeanor of applicant, in particular, and all other witnesses, and considering certain inconsistencies in such testimony, it is herein concluded by the undersigned that applicant is credible. It is apparent, in retrospect, that applicant's handling of his injury claim was, at times, thoughtlessly done, and that his self-proclaimed ignorance of what to do could have been easily remedied with little effort, and that applicant's fears over his job security were apparently not wellfounded [sic]. However, in spite of applicant's thoughtlessness, ignorance, and fears, he is deemed credible.

On the basis of this finding, the A.L.J. found that Doctors Anderson and White's testimony satisfied claimant's burden of proof.

On administrative review, Lumbermen's argued, among other things, that the award lacked a material finding addressing the affirmative defense of lack of statutory notice. Claimant responded by arguing that Lumbermen's claim processing "compounded ... [claimant's] ignorance by simply forgetting about" the claim. The A.L.J. agreed and issued a decision upon review affirming the award and supplementing it with the following findings:

For several reasons, defendants' affirmative defense is not considered applicable herein. First, a review of the procedural history of this claim indicates that because this claim was considered a "no time loss claim" initially, the carrier never issued a NOTICE OF CLAIM STATUS formally accepting the claim. Although this is apparently an accepted claim processing practice in similar cases, such a practice can lead to ambiguity and confusion regarding the status of a claim at any particular point in time. Suc [sic] is clearly the case in this claim, as the carrier did not issue a NOTICE OF CLAIM STATUS modifying the unwritten acceptance of the claim as a no time loss claim until February 8, 1990, some four months after applicant had filed a PETITION TO REOPEN the claim—although the claim had never been closed. With regard to this specific affirmative defense, in the case of *Terry Grantham Co. v. Industrial Commission*, 154 Ariz. 180, 741 P.2d 313 (App. 1987), the Court of Appeals acknowledged that "special circumstances" could exist sufficient to justify the carrier's liability for medical costs incurred, even in the absence of notice to the employer. It is herein concluded, based on the carrier's own nonfeasance in failing to timely process and ultimately terminate this claim, that it created sufficient uncertainty regarding the claims status so as to create a "special circumstance" justifying the carrier's liability for the surgery ultimately performed on August 18, 1989.

20. Secondly, the long standing [sic] rule in Arizona is that the Worker's [sic] Compensation Act is to be liberally construed in favor of the worker, *Pashcucci [sic] v. Industrial Commission*, 126 Ariz. 443, [442] 616 P.2d 902 (App.1980). It is herein concluded that even if applicant failed to strictly conform to the letter of the law in notifying his employer

of ongoing or impending treatment, "special circumstances" exist so as to render the defendant carrier liable for the treatment culminating in the August 18, 1989 surgery, and its sequelae, as compensable consequences of the subject industrial injury.

## II. DISCUSSION

### A. *Burden of Proof*

■ Lumbermen's asserts, as it did below, that claimant failed to satisfy his burden of proving that the August 1988 injury caused the disc herniation. These arguments were properly directed to the A.L.J. because they question claimant's credibility. But the A.L.J., not this court, is the judge of witness credibility. *See, e.g., Perry v. Industrial Comm'n,* 112 Ariz. 397, 542 P.2d 1096 (1975).

The current record unquestionably raised substantial doubts about claimant's credibility. Among other inconsistencies, he apparently presented differing histories depending on his perceived self-interest at the time. He did not mention the August 1988 injury to treating physicians when he wanted private insurance coverage. He did not mention any back problems when he wanted clearance to enter nursing school. But when he sought workers' compensation coverage for a serious back condition requiring surgery and involving substantial disability, he provided a history of continuous radicular symptoms since the August 1988 injury even though Dr. Widoff was never told of these complaints and Dr. Anderson was not told of these complaints until April 1989. But the A.L.J. has accepted claimant's credibility and we are bound by that acceptance.

In its reply brief, Lumbermen's denies that all of its arguments turn on credibility. It focuses on the cross-examination of Dr. White, suggesting that this expert conceded that the herniation could not be related to the August 1988 injury if claimant failed to communicate lower back or radicular symptoms to Dr. Widoff.

We disagree. Dr. White's answer concerned whether claimant had the symptoms, not whether he communicated his complaints to Dr. Widoff. Because the A.L.J. accepted claimant's history of continuous symptoms, Dr. White's concession on cross-examination lacked foundation and his testimony that the August 1988 injury probably caused the herniated disc had foundation. We accordingly conclude that claimant satisfied his burden of proof.

### B. *Notice*

An injured worker has a statutory right to promptly receive reasonable and necessary medical treatment for an industrial injury. *See* A.R.S. § 23–1062. In 1963, the supreme court rejected a requirement of prior authorization for reasonably necessary treatment. *See Gullick v. Industrial Comm'n,* 94 Ariz. 237, 383 P.2d 123 (1963). In 1968, the legislature amended section 23–1062 to require notice to the employer of reasonably necessary medical treatment. The current version of the statute provides:

> Promptly, *upon notice to the employer,* every injured employee shall receive medical, surgical and hospital benefits or other treatment ... and other apparatus ... reasonably required at the time of the injury, and during the period of disability.

A.R.S. § 23–1062(A) (emphasis added).

Since this amendment, this court has consistently held that although prior authorization for treatment is unnecessary, notice is required to impose liability for treatment. *See Scottsdale Memorial Hospital v. Industrial Comm'n,* 158 Ariz. 95, 761 P.2d 169 (App.1988); *Terry Grantham Co. v. Industrial Comm'n,* 154 Ariz. 180, 741 P.2d 313 (App.1987); *Baudanza v. Industrial Comm'n,* 149 Ariz. 509, 720 P.2d 110 (App.1986); *Pickett v. Industrial Comm'n,* 26 Ariz.App. 213, 547 P.2d 484 (1976). The notice is required because it gives "the employer an opportunity to participate in the decision-making for which it must ultimately pay; it can investigate the reasonableness of or need for the suggested treatment and suggest alternate procedures before the treatment is a *fait accompli.*" *Pickett,* 26 Ariz.App. at 214, 547 P.2d at 485; *see also Scottsdale Memorial Hospital,* 158 Ariz. at 98, 761 P.2d at 170

("[N]otice must be given in sufficient time for the carrier to conduct the investigation contemplated by *Pickett.* Calling the carrier from the admission desk of the hospital does not give reasonable notice....").

This case law, however, also recognized that "special circumstances" may justify coverage despite lack of notice. In *Pickett,* 26 Ariz.App. at 214, 547 P.2d at 485, the court identified two such circumstances: an emergency that prevents an employee from notifying the employer and an employer's refusal to provide necessary treatment after a timely request for it. *See also Scottsdale Memorial Hospital,* 158 Ariz. at 98, 761 P.2d at 172.

*Grantham,* however, appears more expansively to define "special circumstances." In *Grantham,* the claimant was a quadriplegic as a result of the industrial injury. When he was released from the hospital, he notified the carrier that he intended to move into a rental residence, and the carrier modified this house to accommodate the claimant's special needs.

Claimant's circumstances subsequently changed. One of the claimant's roommates planned to move; the other lost his job. A house where claimant grew up, and which he could afford to purchase, became available. Without notifying the carrier, claimant purchased and moved into this house. He then notified the carrier that his new residence required modification, but the carrier refused to authorize the necessary changes because claimant had not notified it before moving.

This court acknowledged that the claimant failed to give the carrier notice, but concluded that "special circumstances" excused this lack of notice:

We must acknowledge that the administrative law judge's finding of "emergency circumstances" gives that term a very broad definition. Nonetheless, we believe that ... [the claimant's] situation was sufficiently "special," and his method of resolving it sufficiently reasonable, to require the result that ... [the carrier] not escape responsibility for paying for the necessary alterations to ... [the claimant's] new residence.

....

Furthermore, the primary reason ... [the carrier] posits for the required notice is that it would have permitted it to investigate alternatives to the move. This is a process that would, in all likelihood, have taken more time than ... [the claimant] could have been expected to wait. [The claimant] might have had time in the literal sense to give notice of the move. Under the particular facts of this case, however, we do not find it unreasonable that he be excused from doing so.

*Grantham,* 154 Ariz. at 182, 741 P.2d at 315.

We disagree with the reasoning in *Grantham* for several reasons. We believe the court artificially relied on impracticality of notice because the circumstances did not prevent Grantham from giving notice. There was no evidence to support the finding that investigation of alternatives would have taken more time than the circumstances permitted. In any event, reliance on impracticality of notice was unnecessary because the statute entitles an injured worker to medical "apparatus" upon providing notice. *See* A.R.S. § 23–1062(A). The notice requirement therefore properly applied to the modifications themselves, not to the move, and the carrier was provided notice of the need for modifications. If the move had been unnecessary, the carrier could have argued that the modifications were not reasonably necessary. But, the court improperly relied on the necessity of the modifications to justify the supposed lack of notice even though reasonable necessity and notice are separate statutory requirements. In effect, the court applied *Gullick,* where the supreme court rejected a requirement of prior authorization for reasonable necessary medical treatment, to a post-amendment case, when the amendment to section 23–1062 requires notice to the employer of reasonably necessary medical treatment to impose liability.

■ In the current case, claimant relies on *Grantham* to argue that notice was unnecessary because the back surgery indisputably was reasonable and necessary.

We reject this argument because it also attempts to apply *Gullick* to a post-amendment case. Notice may be excused only if "special circumstances" justify liability for treatment despite lack of notice.

■ We turn then to the supplemental finding that the current case presented such "special circumstances." The A.L.J. found no exigency that prevented claimant from notifying Ball or Lumbermen's. Rather, he found "special circumstances" because Lumbermen's no time loss claim processing of claimant's claim constituted "nonfeasance" and created uncertainty as to the status of the claim.

The A.L.J.'s finding relies on *Grantham's* definition of "special circumstances" to include more than emergencies. We accept this reasoning in principle. *Pickett* itself mentioned an employer's refusal to provide reasonably necessary treatment as an independent justification for liability despite lack of notice. Other similar circumstances would include conduct by an employer or carrier foreseeably leading claimant to forgo notice.

We, however, cannot accept that special circumstances existed in this case. The A.L.J. apparently faulted Lumbermen's for not formally accepting and terminating the claim. Claimant additionally argues that Lumbermen's should have made "some effort to notify ... [claimant] of his need to return to doctor's care, threatening to terminate benefits for failure to return to doctor's care, forwarding ... [claimant] to an independent medical examination, or simply calling ... [claimant] on the phone to discuss briefly the nature of his injury."

Our review of this finding is hamstrung by the lack of evidence concerning no time loss claim processing practices. Because of the lack of evidence, the court is unable to determine whether any of these alleged omissions support the finding of "nonfeasance." The term "nonfeasance" denotes a failure to perform an act one is obligated to perform. *See* Black's Law Dictionary at 1208 (rev. 4th ed. 1968). Without evidence on a carrier's processing duties in no time loss claims, we cannot determine whether Lumbermen's failed to do anything that it should have done.

Evidence also is necessary to assess the alternative finding that established no time loss claim processing is inherently uncertain. We cannot evaluate whether the established process is inherently uncertain or merely became so as a result of claimant's "thoughtlessness." If no time loss claims are monitored by means of treating physicians' reports, claimant's claim was "lost" because he unilaterally discontinued treatment with Dr. Widoff and then obtained private coverage by omitting the history of the industrial injury until July 1989.

■ The question, therefore, is whether claimant or Lumbermen's had the burden of producing this necessary evidence. In our opinion, the burden rested with claimant. Lumbermen's timely asserted the affirmative defense and proved that claimant failed to notify Ball of months of medical treatment, including back surgery. The burden shifted to claimant to establish "special circumstances" justifying liability despite this lack of notice. *See Pacific Fruit Express v. Industrial Comm'n,* 153 Ariz. 210, 735 P.2d 820 (1987) (claimant has burden of proving circumstances excusing failure to report forthwith injury to employer). Although the hearing was expressly expanded to include the affirmative defense, claimant produced no evidence but rather raised his arguments for the first time on administrative review. Because evidence regarding no time loss claim processing was necessary, claimant failed his burden of proof.

Our power of review is limited to affirming or setting aside an award as a whole. *See* A.R.S. § 23–951(D). Although sufficient evidence supports the award for continuing benefits, insufficient evidence supports the finding of "special circumstances." We accordingly set aside the award.

EHRLICH, P.J., and CONTRERAS, J., concur.